# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

**KEVIN M. THOMAS,**

       **Plaintiff,**                 Civil Action No. 16-cv-13565

       v.                        Magistrate Judge Mona K. Majzoub

**COMMISSIONER OF**
**SOCIAL SECURITY,**

       **Defendant.**

_____/

## OPINION AND ORDER
## DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [14] AND
## GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [18]

Under 42 U.S.C. § 405(g), Plaintiff Kevin Thomas seeks judicial review of Defendant Commissioner of Social Security's determination that he is not entitled to social security benefits. (Docket no. 1.) Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 14) and Defendant's Motion for Summary Judgment (docket no. 18). With consent of the parties, this case has been referred to the undersigned for final judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. (Docket no. 15.) The Court has reviewed the pleadings and dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2).

### I.    PROCEDURAL HISTORY

On June 12, 2013, Plaintiff applied for Disability Insurance Benefits ("DIB") on the basis of several physical and mental impairments. (TR 34.) The Social Security Administration initially denied Plaintiff's claims on September 27, 2013. (TR 100-03.) On June 18, 2015, Plaintiff appeared with a representative and testified at a hearing before Administrative Law Judge (ALJ) JoErin O'Leavy. (TR 31.) On July 31, 2015, the ALJ issued an unfavorable decision on Plaintiff's

claims. (TR 31-43.) Plaintiff requested a review of the ALJ's decision with the Appeals Council, which was denied on August 12, 2016. (TR 1.) On October 5, 2016, Plaintiff commenced this action for judicial review, and the parties filed cross motions for summary judgment, which are currently before the Court. (Docket no. 14; docket no. 18.)

### III. HEARING TESTIMONY AND MEDICAL EVIDENCE

Plaintiff sets forth a brief procedural history of this matter as well as a short summary of the relevant medical records. (Docket no. 14, pp. 1-6.) The ALJ summarized Plaintiff's medical records (TR 38-42), and Defendant provided an additional summary of Plaintiff's medical and non-medical records (docket no. 18, pp. 2-7). Having conducted an independent review of Plaintiff's medical record and the hearing transcript, the undersigned finds that there are no material inconsistencies among these recitations of the record. Therefore, in lieu of re-summarizing this information, the undersigned will incorporate the above-cited factual recitations by reference and will also make references and citations to the record as necessary to address the parties' arguments throughout this opinion.

### IV. ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ determined that Plaintiff did not engage in substantial gainful activity since June 12, 2013, the application date. (TR 36.) In addition, the ALJ found that Plaintiff had the following severe impairments: "asthma, affective disorder, anxiety disorder, and personality disorder." (*Id.*) Nevertheless, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (*Id.*) In addition, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to do a full range of work at all exertional levels with the following non-exertional limitations: he was unable to climb ladders, ropes, or scaffolds; he could

not work around unprotected heights or dangerous moving mechanical parts; he should avoid concentrated exposure to dust, odors, fumes, pulmonary irritants, and extreme temperatures; he was limited to simple, routine, repetitive tasks not at a production rate pace; he was limited to simple work-related decisions; and he could occasionally interact with supervisors and coworkers but never with the public. (TR. 38.) On the basis of this determination, the ALJ posed a hypothetical to the Vocational Expert ("VE"), who testified Plaintiff is capable of performing occupations that exist in significant numbers in the national economy, including cook helper, cleaner, and clerical assistant. (TR 42-43.) Consequently, the ALJ concluded that Plaintiff was not under a disability, as defined in the Social Security Act, at any time since June 12, 2013, the application date. (TR 43.)

## V. LAW AND ANALYSIS

### A. Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts"). "But '[a]n ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013) (quoting *Cole v. Astrue,* 661 F.3d 931, 937 (6th Cir. 2011)).

**B.     Framework for Social Security Determinations**

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1)     Plaintiff was not presently engaged in substantial gainful employment; and

(2)     Plaintiff suffered from a severe impairment; and

(3)     the impairment met or was medically equal to a "listed impairment;" or

(4)     Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work. If not, Plaintiff would be deemed disabled. *See id.* at § 404.1520(g). The Commissioner has the burden of proof only on

"the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [Plaintiff] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [Plaintiff's] individual physical and mental impairments.'" *Id.* (citations omitted).

### C. Analysis

Plaintiff contends that the ALJ erred by failing to evaluate a Work Activity Questionnaire prepared by Rebecca Burleson (the "Questionnaire"), which according to Plaintiff demonstrates Plaintiff's inability to work in a competitive environment. (Docket no. 14, p. 6-7.)

As a program manager at New Dimensions, Ms. Burleson is considered a "non-medical source." *See Titles II & XVI: Considering Opinions & Other Evidence from Sources Who Are Not "Acceptable Med. Sources" in Disability Claims*, SSR 06-03p (S.S.A. Aug. 9, 2006). The ALJ's decision should reflect the consideration of opinions from "non-medical sources" who have seen the claimant in their professional capacity. *Id.* Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case. *Id.*

Plaintiff contends that the ALJ committed reversible error by "not evaluating the most critical piece of evidence in this case [i.e., the Questionnaire]." (Docket no. 14, p. 4.) Although

5

Plaintiff concedes that the ALJ considered the Questionnaire (*id.* at 7), Plaintiff asserts that the ALJ should have more thoroughly analyzed the Questionnaire in her Decision, including the basis for not incorporating Ms. Burelson's responses in the RFC. (*Id.*)

As set forth above, the ALJ "generally should explain the weight given" to non-medical opinions or "otherwise ensure that the discussion of the evidence . . . allows a claimant or subsequent reviewer to follow the adjudicator's reasoning." If lay witness testimony is provided, the ALJ cannot disregard it without comment, and must give reasons for not crediting the testimony that are germane to each witness. *Maloney v. Comm'r of Soc. Sec.*, 480 F. App'x 804, 810 (6th Cir. 2012) (citing *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)). But even if the ALJ erroneously disregards a lay witness's testimony, the error is harmless if "no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Id.* (citing *Stout v. Comm'r of Soc. Sec.*, 454 F.3d 1050, 1056 (9th Cir. 2006)).

In the present matter, the ALJ provided substantial evidence in support of the RFC determination, and her discussion of the evidence permits the Court to follow her reasoning. Accordingly, any failure to expressly address the Questionnaire is at most harmless error.

The ALJ determined that Plaintiff was capable of full range of work with certain non-exertional limitations, being "limited to simple, routine, repetitive tasks but not at a production rate pace," being "limited to simple work-related decisions" and "occasionally interact[ing] with supervisors and coworkers but never with the public." (TR. 38.) In explaining the bases for this determination, the ALJ analyzed the records from several of Plaintiff's treating physicians. With regard to Plaintiff's mental impairments—affective disorder, anxiety disorder, and personality disorder—the ALJ discussed the results of an IQ test and mental status examination, testimony

from Plaintiff's mother, and the records of Dr. Michael Brady, Dr. Judy Strait, Thomas Seibert, L.L.P., and Plaintiff's primary care provider, Dr. Steve Brennan. (TR 38-42.)

Dr. Brady, a consultative examining psychologist, reported that Plaintiff's mood was mildly depressed, but noted that Plaintiff's thoughts were spontaneous and well organized. Although Dr. Brady concluded that there was "no psychiatric reason that Plaintiff could not obtain or maintain employment," he opined that Plaintiff's "ability to withstand the normal stressors associated with a workplace setting is somewhat impaired due to maladaptive personality characteristics." (TR 235-38, 288-91.) The ALJ gave Dr. Brady's opinion great weight. (TR 40.)

Dr. Strait, a state agency reviewing psychologist, determined that Plaintiff had the capacity to perform routine, two-step tasks on a sustained basis, but cautioned that Plaintiff may work best alone or in a small, familiar group. (TR 96.) The ALJ gave Dr. Strait's assessment great weight. (TR 41.)

Mr. Seibert reported that Plaintiff would have difficulty working in an occupation that requires average social assertiveness, working in any occupation that has an above-average degree of stress, and working in any occupation that requires above-average powers of concentration. (TR 259.) The ALJ gave Mr. Seibert's opinion great weight, and noted that the RFC was consistent with Mr. Seibert's recommended limitations. (TR 41.)

Dr. Brennan diagnosed Plaintiff with depression, but concluded that Plaintiff had no physical or mental limitations. (TR 357-58.) The ALJ gave Dr. Brennan's opinion little weight to the extent that it was inconsistent with the limitations expressed by Plaintiff's other physicians, but also noted that "it is critically important to my analysis that the treating source has indicated no significant or disabling restriction." (TR 41.)

Summarizing the medical records and opinion testimony, the ALJ concluded that "the preponderance of credible evidence establishes that the claimant experienced no greater than, at most, mild to moderate functional limitations upon his ability to perform basic work activities." (TR 42.) The RFC conforms to the limitations supported by Plaintiff's medical records by restricting Plaintiff to "simple, routine, repetitive tasks but not at a production rate pace," to "simple work-related decisions" and to "occasionally interact[ing] with supervisors and coworkers but never with the public." (TR. 38.) Based on this RFC, the VE determined that jobs existed in significant numbers that Plaintiff could perform. (TR 81-82.)

Compared to the substantial evidence analyzed by the ALJ in her RFC determination, the Questionnaire contributes very little significant information. And although Plaintiff characterizes the Questionnaire as "the most critical piece of evidence in this case," the two-page document consists primarily of "yes" or "no" checkboxes and contains no substantive analysis in support of its conclusions. (TR 227-28.) The conclusory nature of the responses inhibits the sort of "evaluation" that Plaintiff contends the ALJ should have undertaken. In addition, nothing about the Questionnaire suggests that Ms. Burleson intended to express any opinion regarding whether Plaintiff should remain limited to the level of performance observed at New Dimensions. As Defendant notes, the Questionnaire was primarily relevant to the issue of whether Plaintiff's work at New Dimensions constituted substantial gainful activity since the application date. (TR 36. *See* docket no. 18, p. 9.)

Plaintiff's assertion that the ALJ should have devoted more analysis to the Questionnaire frames the objection as a procedural matter. However, the bulk of Plaintiff's briefing seems to argue that the ALJ simply reached the wrong conclusion. (*See* docket no. 14, p 8 ("The Work Activity Questionnaire completed by Ms. Burleson certainly reflects that . . . Mr. Thomas is

working with lower production standards, extra help and supervision, and lower quality standards, as well as more breaks/rest periods and fewer or easier duties."); docket no. 19, p. 3 (rhetorically questioning whether Plaintiff's work history "sound[s] like someone who is able to work in a competitive environment").) Whether framed as a procedural or substantive issue, the ALJ's RFC assessment is supported by substantial evidence, and is "not subject to reversal merely because substantial evidence exists in the record to support a different conclusion." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).

## VI. CONCLUSION

For the reasons stated herein, **IT IS ORDERED** that Plaintiff's Motion for Summary Judgment [14] is **DENIED**, and Defendant's Motion for Summary Judgment [18] is **GRANTED**.

Dated: October 26, 2017		s/ Mona K. Majzoub
					MONA K. MAJZOUB
					UNITED STATES MAGISTRATE JUDGE


## PROOF OF SERVICE

I hereby certify that a copy of this Opinion and Order was served upon counsel of record on this date.

Dated: October 26, 2017		s/ Lisa C. Bartlett
					Case Manager